IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BAILEY BEAUTY ENTERPRISES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TWIN CITY FIRE INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION FILE <br> NO. 1:22-CV-2547-TWT |

### OPINION AND ORDER

This is a breach-of-contract case. It is before the Court on the Defendant's Motion to Dismiss [Doc. 11] and the Plaintiff's Motion to Remand [Doc. 12]. For the reasons set forth below, the Plaintiff's Motion to Remand [Doc. 12] is GRANTED. Lacking subject-matter jurisdiction, the Court declines to decide the Defendant's Motion to Dismiss [Doc. 11] so that it can properly be considered in state court.

### I. Background

The Plaintiff, Bailey Beauty Enterprises, LLC, operates a hair and beauty salon known as Sawyer Bailey Salon in Marietta, Georgia. (Notice of Removal, Ex. 1 at 9 ¶ 5.) The Plaintiff purchased a property insurance policy (the "Policy") from the Defendant, Twin City Fire Insurance Company, with coverage for "Business Income," "Extra Expense," "Action of Civil Authority,"

"Extended Business Income," and "Hazardous Substances." (*Id.* at 10 ¶ 9.) The Policy covers "direct physical loss of or physical damage to" specified property that is "caused by or result[s] from a Covered Cause of Loss." (*Id.* at 10 ¶ 12, 14 ¶ 33.) Between March 20, 2020, and April 24, 2020, the Plaintiff was forced to cease operations after federal, state, and local authorities declared public health emergencies and issued stay-at-home orders in response to the COVID-19 pandemic. (*Id.* at 20 ¶ 56.) Once the Plaintiff was allowed to reopen, it still had to follow strict guidelines and protocols to reduce the spread of the virus. (*Id.* at 14 ¶ 30, 20 ¶ 57.) The Plaintiff alleges that it lost business income and incurred additional expenses due to the presence of COVID-19 and the associated government orders. (*Id.* at 18 ¶ 48.)

On May 6, 2020, the Plaintiff submitted an insurance claim under the Policy, which the Defendant denied. (*Id.* at 18 ¶ 49.) The basis for denial was that "since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered." (*Id.*) On February 28, 2022, the Plaintiff filed suit against the Defendant in Georgia state court for breach of contract, bad faith, and attorney's fees. The Complaint alleges that the Plaintiff's COVID-19-related losses and expenses were covered under the Policy's Business Income, Extra Expense, Civil Authority, and Extended Business Income provisions. The Defendant removed to this Court based on diversity jurisdiction and then moved to dismiss the Complaint in its entirety. (Notice of Removal, at 1.) In response, the Plaintiff filed a Motion to Remand

on the grounds that the amount in controversy is below the $75,000 threshold for diversity jurisdiction. The two pending motions have been fully briefed and are now ripe for review.

## II.  Legal Standard

Federal courts possess limited jurisdiction; they may only hear cases that the Constitution and the United States Congress have authorized them to hear. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action brought in state court may be removed by a defendant to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441. 28 U.S.C. § 1332(a) provides one such jurisdictional hook: even absent a federal question, diversity jurisdiction can be invoked if there is complete diversity among the parties and the amount in controversy is more than $75,000. In keeping with their limited authority, federal courts "strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (brackets omitted). "If a plaintiff makes an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quotation marks, citation, and alteration omitted). In some cases, the

3

complaint alone may make apparent that the amount in controversy exceeds the jurisdictional minimum, whereas in other cases, the defendant will need to produce additional evidence showing that removal is proper. *See id.*

### III. Discussion

Here, the Complaint does not allege a specific amount of damages but rather seeks to recover "in an amount to be determined at trial" for breach of contract, bad faith, and attorney's fees. (Compl. at 21.) In its Notice of Removal and response brief, the Defendant argues that the Plaintiff's contract and bad faith claims exceed the amount-in-controversy requirement by themselves. (Notice of Removal ¶¶ 27-29; Def.'s Br. in Opp'n to Pl.'s Mot. to Remand, at 2.) According to the Defendant, the Plaintiff stands to recover up to 12 months of COVID-19-related losses and expenses under the Policy's Business Income and Extra Expense provisions, while the Extended Business Income provision could tack on another 30 days of coverage for income losses. (Def.'s Br. in Opp'n to Pl.'s Mot. to Remand, at 2.) Based on the Plaintiff's estimated annual revenue of $60,000, the Defendant calculates that the insured loss could balloon to $65,000 before even adding extra expenses. (*Id.*) Also, if the jury were to find bad faith on the Defendant's part, O.C.G.A. § 33-4-6(a) would entitle the Plaintiff to at least $32,500 in additional damages—*i.e.*, the greater of (1) "50 percent of the liability of the insurer for the loss" or (2) $5,000—plus reasonable attorney's fees. (*Id.* at 2, 7.)

4

The problem with the Defendant's removal argument is that it relies more on speculation than evidence and contradicts specific allegations in and attachments to the Complaint. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1214-15 & n.67 (11th Cir. 2007) (If the notice of removal and accompanying evidence are "insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings."). Namely, the Defendant assumes that the Plaintiff lost (and will seek to recover) its *entire* revenue from the first 13 months of the COVID-19 pandemic. But the Complaint specifically states that the Plaintiff was only forced to shut down its business from March 20, 2020, until April 24, 2020. (Notice of Removal, Ex. 1 at 20 ¶ 56.) Although the Plaintiff had to "severely curtail" its operations upon reopening, it was still allowed to receive clients and earn revenue after the one-month closure, reducing any potential payout under the Policy. (*Id.* at 20 ¶ 57.) So, on the Court's reading of the Complaint, it is implausible that the Plaintiff will be able to recover the $65,000-plus in contract damages predicted by the Defendant.

This initial impression is confirmed by the exhibits to the Complaint and the Policy itself. On July 2, 2021, the Plaintiff's counsel sent a demand letter to the Defendant requesting $10,823.07 for lost income and expenses due to COVID-19. (*Id.* at 241.) That sum, if paid, would have satisfied all of the Plaintiff's claims under the Policy, including for Business Income, Extra

Expense, Civil Authority, and Extended Business Income coverage. (*Id.*) The demand letter, like the Complaint, also stated that the "[p]eriod of [r]estoration" was from March 20, 2020, through April 23, 2020. (*Id.*) This creates an important limitation on the Plaintiff's potential recovery: under the Policy, the Plaintiff can access Business Income and Extra Expense coverage solely "*during*" the period of restoration. (*Id.* at 66 (emphasis added).) That means that the Defendant could be liable at most for 35 days of Business Income and Extra Expense damages, not the 12 months cited in the Defendant's Notice of Removal and response brief.

In its Motion to Remand, the Plaintiff asserts that the demand letter "makes clear that [the] Plaintiff contends [the] Defendant is liable for only $10,823.07." (Pl.'s Mot. to Remand, at 5 (emphasis omitted).) In response, the Defendant argues that the Plaintiff should have stipulated to that fact in the Complaint or the Motion. (Def.'s Br. in Opp'n to Pl.'s Mot. to Remand, at 5-6.) True, some courts have considered a plaintiff's refusal to stipulate to limit damages in setting the amount in controversy, but that evidence does little here to show, as the Defendant must, that the Plaintiff is seeking *more* than the $75,000 jurisdictional minimum. *See Welsh v. N.H. Ins. Co.*, 843 F. Supp. 2d 1006, 1010-11 (D. Ariz. 2012). The Defendant also argues that the Plaintiff must have reassessed its potential recovery in the seven months between sending the demand letter and filing the Complaint. (Def.'s Br. in Opp'n to Pl.'s Mot. to Remand, at 5.) Not so. Both the demand letter and the Complaint are

6

predicated on the same losses and expenses, seek coverage under the same four provisions of the Policy, and list the same dates as the closure period or the period of restoration. For these reasons, even though settlement offers are not themselves determinative, the Court regards this one as a "reasonable estimate" of the Plaintiff's claims. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). The Defendant, for its part, has not identified any material differences between the demand letter and the Complaint. Thus, the demand letter is entitled to great weight as "relevant evidence of the amount in controversy[.]" *Id.*; *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994) ("While [a] settlement offer, by itself, may not be determinative, it counts for something.").

If, as the Court accepts, the Plaintiff is seeking around $10,823.07 in contract damages, then it is highly unlikely that this case will satisfy the amount-in-controversy requirement for removal. At that number, the Plaintiff could collect a maximum of $5,411.54 in bad-faith damages under O.C.G.A. § 33-4-6(a), so attorney's fees would have to bridge the $58,765.39-gap between the damages award and the jurisdictional threshold. But in the Notice of Removal, the Defendant came up with only $30,000 as a "modest award" of attorney's fees, and that estimate, unsupported by any facts or evidence, was based on a damages award of $90,000-plus. (Notice of Removal ¶¶ 28-29.); *See Marshall v. Ga. CVS Pharmacy, LLC*, 580 F. Supp. 3d 1301, 1309 (N.D. Ga. 2022) (rejecting as "too conclusory" an allegation that "it is quite possible that

the attorney's fees spent litigating a case through trial could accrue to $30,000 or more" (citations and alteration omitted)). Based on the Court's own experience and common sense, developed over 25 years on the federal bench, there is little chance that the Plaintiff's reasonable attorney's fees will exceed its total damages by more than 3.5 times.[1] *See Roe*, 613 F.3d at 1062 ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.") Therefore, the amount in controversy does not exceed $75,000, and the Court lacks diversity jurisdiction and must remand the case, including the Defendant's pending Motion to Dismiss, to state court.

## IV.   Conclusion

For the foregoing reasons, the Plaintiff's Motion to Remand [Doc. 12] is GRANTED. Lacking subject-matter jurisdiction, the Court declines to decide the Defendant's Motion to Dismiss [Doc. 11] so that it can properly be considered in state court.

SO ORDERED, this     21st    day of October, 2022.

---

[1] In any event, some district courts in this circuit solely consider the "fees accrued at the time of removal in calculating the amount in controversy" rather than "include a highly speculative amount of attorney's fees estimated through trial." *Brown v. Wendy's Int'l, LLC*, 2021 WL 2886078, at *3 (M.D. Fla. July 9, 2021) (citations omitted); *accord Marshall*, 580 F. Supp. 3d at 1309. That number would presumably come in well below the Defendant's $30,000 estimate for the entire case.

/s/ Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge